UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JUAN ROGERS,
                          Petitioner,

          -against-

CHRISTOPHER ARTUZ, Superintendent,

                          Respondent.
---------------------------------------------------------x

MEMORANDUM,
JUDGMENT & ORDER
00-CV-2718 (JBW),
03-MISC-0066 (JBW)

JACK B. WEINSTEIN, Senior District Judge:

## I. Introduction

Petitioner Juan Rogers moves pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure for relief from a judgment entered by this court denying his petition for a writ of habeas corpus. *See Rogers v. Artuz*, Nos. 00-CV-2718, 03-MISC-0066, 2003 WL 21817490 (E.D.N.Y. July 7, 2003).

The original petition was brought in the Southern District of New York, transferred to the Eastern District and assigned to another judge of this court. *See* Docket sheet items 1-4. It was reassigned to the present judge on April 25, 2003 as part of a major reassigment. *See id.* item 38. The petition was dismissed on Aug. 1, 2004. *Id.* item 42. An appeal was dismissed on July 12, 2004. *Id.* item 55.

A notice of motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure was filed on December 19, 2006. *Id.* item 60. An attorney was appointed for the movant on January 23, 2007. *Id.* item 6. An order denying a motion for summary dismissal was entered on January 31, 2007. *Id.* item 66.



A full hearing was held on June 25, 2007. *Id.* item 76. *See* Transcript of June 25, 2007. Both sides have now submitted papers supporting and opposing the Rule 60(b) motion. The matter is ready for decision.

For the reasons set forth below, petitioner's motion is denied.

## II. Facts and Procedural History

On May 3, 1995, a Suffolk County jury convicted petitioner of murder in the second degree for the 1993 killing of Sandra Mathys. Starting out as petitioner's Kung Fu student, Ms. Mathys later became his mistress. After some time, Ms. Mathys grew tired of petitioner's refusal to tell his wife about their affair and began placing phone calls to petitioner's wife, seeking to alert her to petitioner's indiscretions. Petitioner, seeking to put a permanent end to his extra-marital relationship, shot Ms. Mathys twice in the head, left her dead in the driver's seat of her still-moving car, and fled by foot some 20 miles to his mother's house.

Over a year passed between the killing and petitioner's arrest. Michael Mathis, a drug convict and friend of petitioner, was picked up by Suffolk County police for parole violations stemming from failure to pay child support and multiple trips out of the county without permission from the New York State Division of Parole. Mathis approached police officers with information relating to Ms. Mathys' death, and in exchange for his release and the termination of his lifetime parole, agreed to assist the officers with their investigation of petitioner Rogers. Through a series of taped conversations, petitioner admitted committing the murder to Mathis and provided accurate details as to how he had done it. On October 30, 1994, while watching an episode of *Crimestoppers* about Ms. Mathys' murder, petitioner had the following conversation with Mr. Mathis:

2

R[ogers]: [I was i]n the passenger seat. She wa[s], we were at a stop sign. And I was making all nice, nice and I told her all of this shit this

M[athis]: This was so she'd be . . .

R: All kind of bullshit.

M: Yeah, yeah.

R: Everything. Right, she started pulling up and the whole time I'm like this when I'm talking, I'm just checking, I'm waiting till I get to a good spot by the woods.

M: Uh huh.

R: Get her nice and quiet and I saw the shit was clear, I was like boom. The first one she just went like this. Her head hit the steering wheel.

M: Word?

R: Then I thought I'd just hit it one more time as I go out, boom and I drive right out into the woods and ran all the way around, all the way through Wyandanch, all the way fucking down Grant Boulevard, all the way to fuck, all the way back to my mother's. I came in, dried off the shit and I was like this, ah, fucking relaxing man.

M: Well you know, you just jogged, you just jogged about 20 miles.

R: I'm glad I . . . boy cause I was gone. My was

M: That shit, that shit, that shit got me buggin man cause I seen, when I seen two flashers and I seen, how they, how they like, pushed together.

R: Yeah.

M: I'm like.

R: The car, the car hit something cause when I was running through the woods I heard it hit something.

M: Oh yeah.

R: You know, and I, I let the car just keep going forward cause I figured that

3

would really fuck 'em up.

M: From the way they showing in the car, it didn't hit nothing.

R: It sounded like it hit something man.

M: Look, look.

R: They didn't show it on that but it

M: No, I'm saying, they, they showing an actual picture.

R: Of when, where the car.

M: Of the car.

R: Yo, you know what the detectives did? They showed me pictures of her laying in the puddle of blood, all this shit.

M: Get the fuck out of here.

R: I was like why you showing me all that shit. You trying to get me to crack up.

M: Look at this shit. Watch. They show you the actual car. Where, where it's sitting. (background tv)

\*\*\*

R: And you . . . when I went into woods, I can hear another car coming.

M: You can hear another car coming?

R: Yeah, like another car that was coming and I was hauling ass.

M: Ah hah.

R: And I kind of, I dropped the shit in the gutter . . .

M: Huh?

R: You know where the gutter, you know one of the gutters in the street?

M: Oh yeah, yeah, yeah, yeah.

R: I dropped some shit, they never find that.

M: Nah. Hell no, they won't search no fucking gutter. You know what I'm saying? Won't search no fucking gutter.

R: 20 years from now they'll find that shit man.

M: Yeah.

R: Be on Larry King or the Unsolved Mysteries.

\*\*\*

R: Sandy, man she was a good person but she fucked up.

Brief [on Direct Appeal] of Respondent, Ex. C, at 19-22 (Oct. 30, 1994 Transcript). Petitioner received a sentence of twenty-five years to life, and his conviction was affirmed on appeal. *See People v. Rogers*, 669 N.Y.S.2d 862 (N.Y. App. Div. 1998). Leave to appeal was denied on August 26, 1998. *See People v. Rogers*, 702 N.E.2d 854 (N.Y. 1998).

Petitioner began collateral proceedings prior to the resolution of his direct appeal. In August of 1997, he filed a motion pursuant to New York Criminal Procedure Law Section 440.10, which permits a court in which judgment was entered to vacate that judgment upon motion of the defendant if certain statutory requirements are met. *See* N.Y. Crim. Proc. Law § 440.10. In his Section 440.10 motion, petitioner claimed that (1) the mandates of *Brady v. Maryland*, 373 U.S. 83 (1967), were violated due to the prosecution's failure to turn over exculpatory evidence in the nature of Mr. Mathis' criminal history and possible status as a suspect in a 1994 Staten Island double homicide; (2) the prosecutor's summation violated his right to a fair trial; and (3) his brother had admitted to killing Ms. Mathys. The Suffolk County Court denied petitioner's motion in December of 1997 (Weissman, J.C.C.), finding that these

5

contentions were either not properly part of a Section 440.10 motion or were substantially without merit. Petitioner was denied leave to appeal by the Appellate Division, Second Department in a Decision and Order dated April 29, 1998.

Following the resolution of his direct appeal, petitioner initiated a second collateral proceeding by way of an application for a writ of error *coram nobis*. Petitioner claimed that his appellate counsel was ineffective in failing to raise the *Brady* issue on direct appeal, and that as a result he was entitled to a new appeal. The Appellate Division denied petitioner's *coram nobis* application in February of 2000. *See People v. Rogers*, 703 N.Y.S.2d 726 (N.Y. App. Div. 2000).

Petitioner made a timely application in this court for a writ of habeas corpus in May of 2000. In that application, petitioner presented only his *Brady* claim: that the prosecution's failure to disclose to petitioner that Mathis was a prime suspect in an unrelated double homicide investigation violated his constitutional rights. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("[S]upression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule.") (citations omitted). Petitioner later amended his habeas petition to contend that both his trial and appellate counsel were ineffective in failing to raise the *Brady* claim at trial and on appeal. On July 7, 2003, this court denied the petition for a writ of habeas corpus:

> [P]etitioner cannot demonstrate that there is a reasonable probability that, had this evidence been disclosed to the defense, the result of the proceeding would have been different. Although Mathis was integral to the successful prosecution of petitioner, his utility to the State was largely achieved pre-trial, when he wore a wire to tape his conversations with petitioner. The overwhelming evidence of

6

> petitioner's guilt emanated from petitioner's own mouth. Mathis's testimony was of little moment, so impeaching him with evidence that he was a murderer would have vanishingly small effect on the jury's consideration of petitioner's guilt when weighed against petitioner's audiotaped admission to the murder. Habeas relief is not merited on this ground.

*Rogers v. Artuz*, 2003 WL 21817490, at *13-14. On June 31, 2004, the United States Court of Appeals for the Second Circuit denied petitioner's motion for a certificate of appealability and dismissed his appeal.

Petitioner now moves pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure to vacate this court's judgment denying habeas relief. First, petitioner claims, relying on *Batson v. Kentucky*, 476 U.S. 79 (1986), that the prosecution's peremptory challenges to two African-American venire panelists during the voir dire stage of his trial violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Petitioner contends that the Supreme Court's recent decisions interpreting *Batson* in *Johnson v. California*, 545 U.S. 162 (2005), and *Miller-El v. Dretke*, 545 U.S. 231 (2005), should be applied retroactively. Second, petitioner argues that his *Miranda* rights were violated by police officers when he voluntarily subjected himself to a polygraph test regarding the murder of Ms. Mathys. *See Miranda v. Arizona*, 384 U.S. 436 (1966). For this claim, petitioner relies on *Missouri v. Seibert*, 542 U.S. 600 (2004), also decided by the Supreme Court after his habeas petition was denied. Third, petitioner argues that, to the extent that the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars the relief he now seeks, it is an unconstitutional restraint on this court's inherent powers under Article III, Section 2 of the United States Constitution.

### III. Applicable Law

#### A. Rule 60(b) Generally

7

Rule 60(b) of the Federal Rules of Civil Procedure provides that a district court, "[o]n motion and upon such terms as are just, . . . may relieve a party or a party's legal representative from a final judgment, order, or proceeding" for one of several enumerated grounds, including fraud, mistake, and newly discovered evidence. Fed. R. Civ. P. 60(b). Subsections one through five delineate specific grounds for relief; subsection six, the Rule's catch-all, provides that relief may be granted "for any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). The Supreme Court has interpreted subsection six as requiring a showing of "extraordinary circumstances" to "justify[] the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (internal quotation marks omitted). *See also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) ("[Rule 60(b)(6)] should only be applied in extraordinary circumstances"); *Ackermann v. United States*, 340 U.S. 193, 199 (1950) (same). "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997).

Any motion under Rule 60(b)(6) "shall be made within a reasonable time." Fed. R. Civ. P. 60(b)(6). To determine whether a 60(b)(6) motion is timely, a court must "look at the particular circumstances of each case and 'balance the interest in finality with the reasons for delay.'" *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (quoting *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)).

B. Rule 60(b) Motions as Second or Successive Habeas Petitions

When a Rule 60(b) motion asserts one or more federal bases for relief from a state court's conviction, it is "in substance a successive habeas petition and should be treated accordingly."

8

*Gonzalez*, 545 U.S. at 531. "Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction – even claims couched in the language of a true Rule 60(b) motion – circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id.* "In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify." *Id.* at 532. Accordingly, a 60(b) motion deemed a successive habeas petition is subject to all of AEDPA's procedural requirements. *See id.* at 529-30. By contrast, if a 60(b) motion asserts some procedural defect in the initial habeas proceeding, it should not be treated as a successive habeas petition. *Id.* at 534.

C. Second or Successive Habeas Petitions and AEDPA

Under AEDPA, second or successive habeas petitions requesting relief from a conviction in state court must satisfy three requirements before a district court can adjudicate the merits of a petitioner's claim. First, claims raised in the successive petition must not be duplicative of those raised in the initial application for a writ of habeas corpus. 28 U.S.C. § 2244(b)(1). Second, claims raised in a successive petition must rely "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," *id.* § 2244(b)(2)(A), or be based on new facts "showing a high probability of actual innocence." *Gonzalez*, 545 U.S. at 530 (citations omitted); *accord* 28 U.S.C. § 2244(b)(2)(B)(ii) ("the facts of the underlying claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"). Finally, "before a second or successive application . . . is filed in the district court, the applicant

9

shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.* § 2244(b)(3)(A). This requirement serves a gatekeeping function by "discouraging piecemeal litigation and encouraging petitioners first to exhaust their state remedies and then to present the federal court with a single habeas petition." *Camarano v. Irvin*, 98 F.3d 44, 46 (2d Cir. 1996) (citations omitted). A district court has no choice but to dismiss a claim that fails to meet any of these requirements. 28 U.S.C. § 2244(b)(4).

## IV. Application of Law to Facts

### A. Petitioner's Claims are Substantive, not Procedural

#### 1. *The* Batson *Claim*

In the instant motion, petitioner first claims that state prosecutors violated his constitutional rights by exercising peremptory challenges against two out of three African-American venire panelists during the voir dire stage of his trial. Relying on *Batson*, petitioner asserts that the Equal Protection Clause was violated by the prosecution's exercise of peremptory challenges in a racially discriminatory manner, and that intervening developments in the law entitle him, under Rule 60(b), to a reopening of this court's original judgment rejecting his habeas petition. Petitioner specifically points to *Johnson* and *Miller-El* as supporting this claim.

*Batson* holds that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *See Batson*, 476 U.S. at 86. In *Johnson*, the Supreme Court held unconstitutional California's requirement that a defendant, in order to establish a prima facie violation under *Batson*, must show that racial bias was "more likely than not" the reason for the prosecution's peremptory challenges. *See Johnson*, 545 U.S. at 173. To establish a prima facie

10

case under *Batson* after *Johnson*, a defendant must simply "present[] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.* at 170. In *Miller-El*, the Supreme Court held that the race-neutral explanation for a peremptory challenge required by *Batson* must come from the prosecutor, and not the trial judge or an appellate court. *See Miller-El*, 545 U.S. at 242 ("A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.").

Petitioner claims that these decisions entitle him to a reopening of his *Batson* claim, which was rejected in 1998 by the Appellate Division, Second Department, *see People v. Rogers*, 669 N.Y.S.2d at 863 ("The defendant's remaining contentions are either unpreserved for appellate review or without merit.") (citations omitted), and was not raised in his initial habeas petition as ultimately presented to this court. *See Rogers v. Artuz*, 2003 WL 21817490, at * 4. The thrust of this claim is substantive.

### 2. The Miranda *Claim*

Petitioner contends that his *Miranda* rights were violated by police officers who interrogated him following a voluntary polygraph test. Petitioner also claims that the statements taped by Mr. Mathis, *see supra* Part II, are admissions obtained in violation of his right to counsel. Petitioner argues that the Supreme Court's decision in *Seibert*, decided after his habeas petition was denied by this court, entitles him to the relief now sought.

*Miranda* dictates that an accused in custody must be apprised that (1) he has the right to remain silent; (2) anything he says can and will be used against her in court; (3) he has the right

11

to have an attorney present during interrogations; and (4) if indigent, he has the right to have an attorney appointed to represent her. *See Miranda*, 384 U.S. at 467-73. In *Seibert*, the Supreme Court held that post-*Miranda* warning statements that are clearly products of pre-warning statements violate the Sixth Amendment and must be suppressed. *See Seibert*, 542 U.S. at 613-15. It is unclear how this decision is applicable to petitioner's case, since he was not in custody when his statements to Mathis and the officers administering the polygraph test were made. For present purposes, it is enough to note that petitioner's *Miranda* claim, like his *Batson* claim, was raised in his appeal to the Appellate Division, but was not presented to this court in his initial habeas petition as ultimately presented to this court. Like the *Batson* claim, the *Miranda* claim attacks the constitutionality of petitioner's underlying conviction. Petitioner's *Miranda* claim is also substantive.

Accordingly, the merits of petitioner's claims can only be reached if they are properly part of a Rule 60(b)(6) motion. Otherwise, they are to be deemed part of a second habeas petition, and this court lacks the subject matter jurisdiction necessary to render judgment on the merits. *See* 28 U.S.C. § 2244(b)(3).

### B. Petitioner's Rule 60(b)(6) Motion is a Second Habeas Petition

Petitioner's Rule 60(b)(6) motion is a second habeas petition in disguise. Petitioner does not attack the original habeas proceedings on any procedural grounds. Instead, he seeks to mount new substantive challenges to his 1995 trial. *See supra* Part IV.A. Whatever merit these claims may have, petitioner cannot cloak constitutional challenges to the conduct of police officers and prosecutors in the language of Rule 60(b)(6). Petitioner's claims rest upon the premise that decisions were made before and during his trial that contravene federal law. Such claims are

12

properly part of a petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, not a Rule 60(b)(6) motion. *See supra* Part III.B.

### C. This Court Lacks Jurisdiction over Second Habeas Petitions Without Certification From the Court of Appeals

Petitioner cannot be allowed to circumvent AEDPA's gatekeeping requirements for successive habeas petitions by presenting his claims under Rule 60(b). Subject matter jurisdiction over these claims lies, in the first instance, with the Court of Appeals. 28 U.S.C. § 2244(b)(3).

That the Supreme Court's decisions in *Johnson*, *Miller-El*, and *Seibert* were unavailable to petitioner when he filed his initial application for habeas relief is irrelevant to the current proceedings. At most, these decisions – if deemed retroactively applicable by the Supreme Court – would merit a second habeas application. If petitioner wishes to file a second habeas application in this court, he must first convince the Court of Appeals that such an application is authorized under 28 U.S.C. § 2244(b).

### D. Petitioner's Motion is Untimely Under Rule 60(b)(6)

Even if petitioner's motion were deemed a proper 60(b)(6) motion, it would be untimely. Petitioner's initial habeas application was denied on July 7, 2003, almost three-and-a-half years before petitioner's 60(b)(6) motion was filed. Such a delay is unreasonable. *See Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001) (holding that a 60(b)(6) motion filed three-and-a-half years after the denial of the initial habeas application was unreasonably late). In any event, petitioner's motion relies upon intervening developments in the law, and such developments

13

rarely constitute the "exceptional circumstances" required for relief under Rule 60(b)(6). *See Gonzalez*, 545 U.S. at 536 ("It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation.").

E. AEDPA and Article III

Finally, petitioner claims that AEDPA violates Article III because it divests the district courts of jurisdiction, in the first instance, over second or successive habeas petitions. This claim is without merit. *See Alley v. Bell*, 392 F.3d 822, 833 (6th Cir. 2004) (rejecting Article III challenge to AEDPA's gatekeeping requirements for successive habeas petitions and noting that "[i]f any constitutional provision acts as a limit to AEDPA and/or Rule 60(b) here, it is the Suspension Clause. And the contours of this clause are wide enough to accommodate the limits Congress imposed on successive habeas relief in AEDPA.") (internal citations omitted); *Hincapie-Nieto v. INS*, 92 F.3d 27, 30 (2d Cir. 1996) (noting Supreme Court's rejection of Article III challenge to 28 U.S.C. § 2244(b)(3)(E), which renders a court of appeals' grant or denial of authorization to file a successive habeas petition unappealable) (citing *Felker v. Turpin*, 518 U.S. 651, 661-62 (1996)). *See also Williams v. Taylor*, 529 U.S. 362, 378-79 (2000) (rejecting Article III challenge to 28 U.S.C. § 2254(d), the standards of review prescribed by AEDPA for state prisoners' habeas petitions); *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000) (same); *Hughes v. Johnson*, 191 F.3d 607, 612 (5th Cir. 1999) (same); *Mueller v. Angelone*, 181 F.3d 557, 572-73 (4th Cir. 1999) (same). The Supreme Court has noted, upholding AEDPA against a Suspension Clause challenge, that AEDPA's added restrictions on successive habeas petitions are well within the authority of Congress in defining the scope of the writ. *See Felker*, 518 U.S. at 664.

## V. Conclusion

Petitioner Rogers has attempted to file a second habeas petition in this court by couching it in the language of a Rule 60(b)(6) motion. Because petitioner fails to satisfy AEDPA's requirements for second or successive habeas petitions, his Rule 60(b)(6) motion is denied. The clerk of the court is directed to transfer this application to the clerk of the Court of Appeals for the Second Circuit as a petition for permission to bring a second habeas corpus petition.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: September 12, 2007
　　　　Brooklyn, New York